IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SANDRA MOHAMED, | : |
| Plaintiff, | : Civil No. 17-03911 (RBK/KMW) |
| v. | : **OPINION** |
| ATLANTIC COUNTY SPECIAL SERVICES SCHOOL DISTRICT, ERIC FLECKEN | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court on Defendants Atlantic County Special Services School District and Eric Flecken's (referred to collectively as "Defendants") Motion to Dismiss (Doc. No. 27) Plaintiff Sandra Mohamed's Amended Complaint (Doc. No. 26) under Federal Rule of Civil Procedure 12(b)(6). Plaintiff's Amended Complaint alleges unlawful discrimination, harassment, and retaliation under Title VII of the Civil Rights Act of 1964, the New Jersey Law Against Discrimination ("NJ LAD"), and the New Jersey Conscientious Employee Protection Act ("NJ CEPA"). For the reasons below, Defendants' Motion is **GRANTED** in part and **DENIED** in part.

I.   FACTUAL BACKGROUND[1]

---

[1] On this motion to dismiss, the Court accepts as true the facts pled in the Amended Complaint and construes them in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). The Court notes that, throughout the Amended Complaint, Plaintiff changes the facts from a first-person perspective to a third-person one. The Court still attempts to characterize the facts most favorably to Plaintiff, noting the change in narrative is

This is a case involving alleged racial discrimination and retaliation in the workplace. Sandra Mohamed ("Plaintiff") is a sixty-year-old African American woman. (Am. Compl. (Doc. No. 26) at ¶ 15.) Atlantic County Special Services School District ("the District") first hired her in September 1993 to serve as a teacher's assistant for students with special needs. (*Id.* at ¶ 17.) Plaintiff worked for the District for over twenty-three years, until her termination in January 2017. (*Id.* at ¶¶ 18–19.) During the relevant period, Plaintiff reported to Eric Flecken ("Flecken" or "Supervisor Flecken"). (*Id.* at ¶ 25.)

### A. Racial Discrimination

Plaintiff claims that Defendants discriminated against her because of her race. (*Id.* at ¶ 20.) Specifically, she asserts that Supervisor Flecken targeted Plaintiff. (*Id.* at ¶ 25.) For example, Flecken reassigned her nineteen times during her employment, an "unheard of" and unnecessary number of reassignments given the large number of available employees. (*Id.* at ¶¶ 24–25.) Flecken also purportedly passed Plaintiff over for promotion in favor of a "much less experienced and capable" Caucasian employee. (*Id.* at ¶ 27.) Despite Plaintiff's "stellar job performance and positive review," Supervisor Flecken "always made it clear . . . that he did not value [Plaintiff] and made her life difficult" and "used adverse action to make her position impossible." (*Id.* at ¶¶ 26, 31.)

Defendants' racial discrimination also extended to other African-American employees. (*Id.* at ¶ 28.) Plaintiff claims that Defendants disciplined African American employees far more frequently than Caucasian ones. (*Id.* at ¶ 21.) Defendants also had a racially biased approach to enforcing the District's hours policy because Flecken permitted many employees, including

---

likely because Plaintiff, who had initially filed a *pro se* complaint, is now represented by counsel.

himself, to arrive late and leave work early. (*Id.* at ¶¶ 21, 48.) African American employees, however, faced discipline if they attempted to arrive late or leave early. (*Id.* at ¶ 21.) Plaintiff also claims that Flecken instituted a "a particular employment practice" to limit African American assistants and certified staff to work in the off-campus, school-to-career based program. (*Id.* at ¶¶ 29, 30.) Plaintiff claims that Defendants denied at least four minority students access to the program of their choice. (*Id.* at ¶ 36.) These students, like Plaintiff, believed that Defendants denied these students the program of their choice because of their race. (*Id.*) In addition, Flecken only permitted two Caucasian assistants to work in one select program, despite half of the students having diverse backgrounds. (*Id.* at ¶¶ 30–31.)

In March 2016, Plaintiff wrote a letter to the District's Vice Principal to bring attention to the racist culture within the District's employment practices. (*Id.* at ¶ 38.) Plaintiff also spoke with Flecken's supervisor and informed the teachers' union. (*Id.* at ¶ 39.) Plaintiff claims that Defendants did not take her claims seriously. (*Id.*) In addition, Plaintiff alleges that Defendants ordered her to return to work and retaliated against her. (*Id.*)

### B. Pre-Termination Retaliation

At the time of Plaintiff's letter to the District's Vice Principal, she worked for the District and assisted students in job training for the casino industry. (*Id.* at ¶ 34.) Following her submission of this letter, Plaintiff explained that members of the staff now refused to work with her. (*Id.* at ¶ 41.) Specifically, the Arc of Cumberland County Job Coach did not want Plaintiff involved in the job coach program anymore. (*Id.*) Plaintiff alleges that Defendants excluded her from the program "because of her race" and because "she was a minority who spoke for issues that affected the long-term progress with employment in the casino." (*Id.*) As such, the Job Coach, in coordination with Supervisor Flecken, began a "campaign" of excluding Plaintiff from

meetings.  (*Id.*)  Plaintiff also claims that Defendants petitioned her partner to assist in removing Plaintiff from the program.  (*Id.* at ¶ 41.)

Plaintiff claims that "the brick wall of institutionalized prejudice" caused her several injuries.  (*Id.* at ¶¶ 50–52.)  Plaintiff alleges that she suffered from stress, anxiety, and depression.  (*Id.*)  As a result, Plaintiff took FMLA leave in September 2016.  (*Id.* at ¶ 52.)  Plaintiff's doctor provided information on Plaintiff's leave directly to Defendants.  (*Id.* at ¶ 54.)  Plaintiff's FMLA leave ran until November 26, 2017.  (*Id.* at ¶ 53.)

### C. Retaliatory Termination

By the end of Plaintiff's FMLA leave, Plaintiff continued to need medical treatment and requested an extension until January 3, 2017.  (*Id.* at ¶ 56.)  By January 3, however, Plaintiff remained unable to return to work.  (*Id.* at ¶ 57.)  Plaintiff called the District through its automated call-out line and informed them that she could not return despite her FMLA leave expiration.  (*Id.* at ¶¶ 57–58.)  Defendants never indicated to Plaintiff that she could not extend her FMLA leave further.  (*Id.* at ¶ 59.)

On January 9, 2017, Plaintiff received a letter from the District stating that the Board of Education would meet on January 23, 2017 to discuss her employment.  (*Id.* at ¶¶ 60–61.)  The letter did not mention her recent absences but stated that if Plaintiff wanted to discuss her employment, she could request the meeting be made public.  (*Id.*)  Plaintiff claimed that she began to feel "sick to [her] stomach" at the idea that the public would hear about her stress, anxiety, and depression.  (*Id.* at ¶ 62.)  Plaintiff therefore did not attend the meeting.  (*Id.* at ¶ 65.)  Plaintiff alleges that Defendants used the possibility of a public hearing as a tactic, knowing that Plaintiff would be unable to speak about her employment and mental health in a public forum.  (*Id.* at ¶¶ 63–64.)

Because Plaintiff did not attend the meeting, the Board of Education sent Plaintiff a letter stating that she would be discharged if she did not return to work by January 30, 2017. (*Id.* at ¶¶ 65–66.) The District made no effort to contact Plaintiff beyond this letter. (*Id.* at ¶ 66.) Moreover, Plaintiff did not receive this letter until after January 30, 2017 because a family member who had signed for the letter did not give it to her until after that date. (*Id.* at ¶ 67.) Plaintiff further claims that, even if she had received the letter when it reached her home, she had a mere three days' notice of the hearing. (*Id.* at ¶ 68.)

In early February, Plaintiff received a letter terminating her employment. (*Id.* at ¶ 68.) She claims that this letter first informed her that a previous one had been sent, the one allegedly received by her family member. (*Id.*) Plaintiff requested her job back and informed the District that she did not know of the prior letter until after the January 30 deadline had passed. (*Id.* at ¶ 69.) However, the District denied Plaintiff's requests. (*Id.*)

### D. EEOC Charge and Right to Sue Letter

Plaintiff filed an EEOC Charge on February 23, 2017 alleging race and retaliation discrimination. (EEOC Charge at 2 (Doc. No. 27, Exhibit B).) The Charge explains that the District retaliated against Plaintiff for writing the letter, and it details Defendants' discrimination against students. (*Id.*) Specifically, Plaintiff claimed that Defendants used the information she provided to the District and teachers' union against her. (*Id.*) The Charge concludes that "Respondent has retaliated against me for taking part in a protected activity Race (African American)." (*Id.*) The Charge also indicates that the discrimination took place from March 1, 2016 to January 30, 2017. (*Id.*) On March 1, 2017, the EEOC provided Plaintiff a Right to Sue Letter in response to the EEOC Charge. (*Id.* at 3.)

### E. Procedural History

Plaintiff filed a *pro se* complaint in this Court on June 1, 2017. (Defs.' Mot. to Dismiss at 4.) The Court granted Defendants' motion to dismiss the complaint without prejudice. (*Id.*) Plaintiff then filed an Amended Complaint (Doc. No. 26) with counsel on July 5, 2018. The Amended Complaint includes four causes of action: discrimination and harassment under Title VII (Count I); retaliation under Title VII (Count II); related claims of harassment, hostile work environment, and retaliation under the New Jersey Law Against Discrimination ("NJ LAD") (Count III); and retaliation and hostile work environment under the New Jersey Conscientious Employee Protection Act ("NJ CEPA") (Count IV). (Am. Compl. at ¶¶ 71–93.)

Defendants now move to dismiss Plaintiff's Amended Complaint and offer three main arguments. First, Defendants challenge Plaintiff's Title VII discrimination, harassment, and retaliation claims (Counts I and II) for alleging claims not included in her EEOC Charge and outside the statute of limitations. (Defs.' Mot. to Dismiss at 9, 12, 13.) Second, Defendants challenge Plaintiff's Title VII discrimination, harassment, and retaliation claims (Counts I and II) against Flecken because Title VII does not cover individual liability. (*Id.* at 15.) Lastly, Defendants challenge Plaintiff's NJ LAD termination, discrimination, and hostile work environment claims (Count III) for including claims outside the statute of limitations. (*Id.* at 16.)

Plaintiff opposes Defendants' Motion and argues that her Title VII and NJ LAD claims are not barred by exhaustion requirements or statutes of limitations because all claims can reasonably be expected to grow from her EEOC Charge and are part of continuing violations. (Pl.'s Brief in Opp'n at 2–3.)

## II. STANDARD

### A. Motion to Dismiss Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint or portions of a complaint may be dismissed for failure to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a Rule 12(b)(6) motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In reviewing a motion to dismiss, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court "takes note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court identifies allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations," the court "assume[s] their veracity and then determine[s] whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *Id.*

### III. DISCUSSION

Plaintiff first asserts Title VII claims against both Flecken and the District. Plaintiff then brings related state law claims under NJ LAD and NJ CEPA. Defendants, however, argue that

Defendant Flecken must be dismissed from the case because Title VII does not permit liability against an individual. Defendants also argue that Plaintiff's discrimination and retaliation claims are barred for failing to exhaust administrative remedies.

**A. Whether Plaintiff may bring Title VII claims against Defendant Eric Flecken**

Defendants seek to dismiss Plaintiff's Title VII claims (Counts I and II) against Defendant Eric Flecken because Title VII does not cover individual liability, and claims against Flecken in his official capacity are subsumed within those Title VII claims against the District. Plaintiff does not counter or concede Defendants' argument. The Court therefore considers whether Plaintiff can bring Title VII claims against Flecken.

The Third Circuit is clear that "Congress did not intend to hold individual employees liable under Title VII." *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996); *see also Newsome v. Admin. Office of the Courts of the State of N.J.*, 51 F. App'x 76, 79 n.1 (3d Cir. 2002) ("[I]t is settled that Title VII does not provide for individual liability."). Thus, Plaintiff may not bring any Title VII claims against Flecken in his individual capacity.

Next, the Court considers whether Title VII permits claims against Supervisor Flecken in his official capacity. This issue is largely unsettled in circuit courts across the country.[2] The landscape appears equally divided on this issue within the Third Circuit. For example, some

---

[2] Other circuits appear split on whether Title VII actions can be brought against individual defendants in their official capacities. *Compare Sauers v. Salt Lake Cnty.*, 1 F.3d 1122, 1125 (10th Cir. 1993) ("Under Title VII, suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate.") *and Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000) ("Plaintiff is allowed to proceed with his claims brought under Title VII against the University and Dr. Steger in his official capacity . . . .") *with Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities.").

courts outside of this District have permitted supervisors to be sued under Title VII in their official capacity. *See, e.g.*, *Watkins v. Pa. Bd. of Prob. & Parole*, No. 02-2881, 2002 WL 32182088, at *10 (E.D. Pa. Nov. 25, 2002) ("Although supervisors may not be held individually liable, Title VII is a statutory expression of traditional *respondeat superior* liability . . . ; Consequently, supervisors may be sued in their official capacity."); *Timmons v. Lutheran Children & Family Serv. of E. Pa.*, No. 93-4201, 1993 WL 533399, at *5 (E.D. Pa. Dec. 17, 1993) (individual defendant who was a supervisor "may be held liable under Title VII as acting in his official capacity").

Many courts in this District, however, have held that Title VII does not permit claims against individual supervisors when the employer is a co-defendant. *See, e.g.*, *Stallone v. Camden Cnty. Tech. Sch. Bd. of Educ.*, No. 12–cv–7356, 2013 WL 5178728, at *7 (D.N.J. Sept. 13, 2013) ("Title VII provides for liability against employers, not supervisors."); *Schanzer v. Rutgers Univ.*, 934 F. Supp. 669, 678 n.12 (D.N.J. 1996) ("If defendant is not plaintiff's employer . . . it is irrelevant whether that person was acting in an official or individual capacity . . . ."); *see also, e.g.*, *Foxworth v. Pa. State Police*, No. 03-6795, 2005 WL 840374, at *4 (E.D. Pa. Apr. 11, 2005) ("Because the only proper defendant in a Title VII case is the 'employer,' pursuing such claims against individuals in their official capacities would be redundant."). These cases suggest that the Title VII claims must be dismissed against Supervisor Flecken.

Although there appears to be conflicting precedent, this Court holds that Plaintiff cannot bring a Title VII claim against Defendant Flecken in his official capacity. The Court is persuaded by the reasoning articulated in many of the cases in which a defendant employer is joined by a co-defendant supervisor—namely plaintiff's avenue of recovery pursuant to a Title VII claim is preserved under a theory of *respondeat superior*. Said another way, the Court finds

the Title VII claims against Flecken to be duplicative of those Title VII claims against the District, as the employer. The Court therefore **DISMISSES WITH PREJUDICE** Plaintiff's Title VII claims (Counts I and II) against Flecken. And, with no federal claims remaining against Flecken, the Court declines to exercise supplemental jurisdiction over Plaintiff's NJ LAD and NJ CEPA claims against him. *See Cagnina v. Lanigani*, No. 16-7253, 2017 WL 1157851, at *5 (D.N.J. Mar. 28, 2017) (declining to exercise supplemental jurisdiction over state law claims against one defendant when no viable federal claims existed against that defendant (citation omitted)). The Court now considers Plaintiff's claims against the District.

### B. Whether Plaintiff properly alleges Title VII claims against the District

Plaintiff next argues that the District violated her Title VII protections by subjecting her to discrimination and harassment (Count I) and retaliation (Count II). Defendants, however, seek to dismiss all of Plaintiff's Title VII claims not included in Plaintiff's EEOC Charge for failure to exhaust administrative remedies.

The Third Circuit is clear and requires a plaintiff to exhaust administrative remedies in a Title VII action. Thus, a plaintiff seeking relief under Title VII must first file an EEOC Charge. 29 U.S.C. § 626(d)(1)(B); *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 382 (3d Cir. 2007). In addition, a plaintiff who later brings a claim under Title VII is limited to asserting claims within the scope of this EEOC Charge. *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996). The Third Circuit held that a Plaintiff is limited to claims "can reasonably be expected to grow out of the initial charge of discrimination." *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 298–99 (3d Cir. 1976). While a plaintiff is not limited to claims "checked off in the box section on the front page of the Charge," a plaintiff cannot "greatly expand an investigation simply by alleging new and different facts when [he is] contacted by the Commission following [his] charge." *Barzanty v. Verizon*

*Pa., Inc.*, 361 F. App'x 411, 414 (3d Cir. 2010) (quoting *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 967 (3d Cir. 1978). This Court must therefore consider the relationship between the alleged misconduct in the EEOC Charge and that asserted in the Complaint.

> **1. Whether Plaintiff exhausted administrative remedies for her Title VII discrimination and harassment claims (Count I)**

Plaintiff argues that her Title VII discrimination and harassment claims are within the scope of her Charge because the Charge checked both the "retaliation" and "race" discrimination boxes and characterized her Charge as one of "discrimination." (Pl.'s Br. in Opp'n at 8–9 (Doc. No. 28).) Defendants, however, argue that the Charge only alleges retaliatory termination for writing the March 2016 letter and therefore the Court must dismiss any claims of discrimination or harassment. (Defs.' Mot. to Dismiss at 9 (Doc. No. 27).)

The only language in the Charge which suggests discrimination or harassment is: "Respondent has retaliated against me for taking part in a protected activity Race (African American)." (EEOC Charge at 2.) From this statement, it could reasonably be inferred that the Charge alleges racial discrimination. This inference, however, does not allow Plaintiff to raise any and all discrimination and harassment claims. Those claims of racial discrimination and harassment within the Complaint must be related to, or grow out of, those within the Charge.

The Amended Complaint appears to include instances of racial discrimination seemingly unrelated to the general and vague mention of race in the EEOC Charge. For example, the Amended Complaint alleges discrimination and harassment in the form of racially disparate disciplinary, transfer, and promotion practices. (*Id.* at ¶¶ 21, 24, 27.) None of these instances are mentioned in the EEOC Charge. (EEOC Charge at 2.) In addition, the Amended Complaint does not address the EEOC's fleeting reference that the District took information and "used [it]

against" Plaintiff. *Id.* Thus, even when viewed in a light most favorable to Plaintiff, the discrimination and harassment claims are simply too attenuated from those claims in the EEOC Charge. The Court therefore **DISMISSES** Plaintiff's Title VII discrimination and harassment (Count I) claims against the District for failure to exhaust administrative remedies.

2. **Whether Plaintiff exhausted administrative remedies for her Title VII retaliation claim (Count II)**

The second question is whether Plaintiff's retaliation claim (Count II) can reasonably be expected to grow out of Plaintiff's EEOC Charge. Plaintiff argues that she exhausted her administrative remedies for all her retaliation claims by checking off and referencing "retaliation" in her Charge. (Pl.'s Br. in Opp'n at 10.) Defendants, however, argue that the Charge only alleges retaliatory termination for writing the March 2016 letter and therefore only claims related to this termination may proceed. (Defs.' Mot. to Dismiss at 12.)

Plaintiff's retaliation claims arising from the March 2016 letter can reasonably be expected to grow out of the EEOC Charge. Plaintiff's Amended Complaint broadly alleges retaliation for writing the March 2016 letter that occurred before the termination alleged in the Charge, including exclusion from staff meetings and coordinated efforts to undermine or ignore her complaints. (Compl. at ¶¶ 40–42.) Like the Charge, these additional claims: (1) alleged retaliation; (2) resulted from the same March 2016 letter; and (3) occurred between March 1, 2016 and January 30, 2017. Plaintiff's claims therefore can reasonably be expected to grow from the Charge and have been exhausted. Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiff's Title VII retaliation claim (Count II) against the District.

The Court notes, however, that Plaintiff may not allege conduct unrelated to the EEOC Charge, even though the Court has found Plaintiff plausibly alleged a retaliation claim.[3] The Court will relatedly only consider conduct within the statute of limitations period.[4]

### 3. Whether Plaintiff's unexhausted Title VII claims can survive for equitable exceptions

Plaintiff further contends that even if she failed to exhaust her administrative remedies, all Title VII claims should survive for equitable exceptions. Plaintiff argues that her lack of legal assistance and knowledge should not preclude her from asserting her Amended Complaint claims because they are the same as her Charge claims. (Pl.'s Rep. Br. in Opp'n at 11.) Plaintiff relies upon *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378 (2d Cir. 2015) in arguing that the Court should adopt a "reasonable relatedness" exception to the exhaustion requirement for her claims. *Id.* at 10. Defendants, however, counter that this exception—which has not been recognized by the Third Circuit—does not apply because Plaintiff's unexhausted claims are not reasonably related to her exhausted claims. (Defs.' Rep. Br. at 5 (Doc. No. 29).)

Contrary to Plaintiff's theory, the reasonable relatedness exception to the exhaustion requirement is inapplicable. In *Fowlkes*, the Second Circuit considered whether any equitable exceptions might excuse the plaintiff's failure to exhaust administrative remedies for his Title

---

[3] Plaintiff's Amended Complaint broadly alleges additional retaliation seemingly unrelated to the EEOC Charge or March 2016 letter, including nineteen transfers. (Am. Compl. at ¶ 24.) The Amended Complaint does not allege how such adverse employment actions were retaliation at all, let alone retaliation related to the March 2016 letter. The transfers are described as race discrimination, not retaliation. (*Id.* at ¶ 23–24); (Pl.'s Rep. Br. at 4.) As such, the Court will not consider these factual allegations under this Title VII retaliation claim.

[4] Plaintiff alleges that the District excluded her from staff meetings and coordinated efforts to undermine or ignore her complaints before her termination. (Am. Compl. at ¶¶ 42, 78.) These are "discrete acts," *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002), and are individually actionable as retaliation. The Court will not, however, consider conduct prior to April 29, 2016. *See* 42 U.S.C. § 2000e–5(e)(1).

VII claims. *Fowlkes*, 790 F.3d at 381. The Second Circuit determined that a "reasonable relatedness" exception may apply "'[w]here the complaint is one alleging retaliation by an employer against an employee for filing an EEOC charge,' or 'where the complaint alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.'" *Id.* at 386 (citing *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003)). The "reasonable relatedness" exception does not apply to the facts presented. Plaintiff does not allege retaliation for filing an EEOC Charge or further discrimination carried out in the same manner alleged in her Charge. The Court therefore declines to adopt any exception to the exhaustion requirement.

  C. **Whether Plaintiff plausibly alleges NJ LAD claims against the District**

Plaintiff brings related claims of discrimination against the District pursuant to New Jersey's Law Against Discrimination ("NJ LAD"). Specifically, Plaintiff alleges that the District harassed her and subjected her to a hostile work environment. (Am. Compl. at ¶ 82.) Defendants, however, argue that these claims must be dismissed because they are outside the two-year statute of limitations.

An NJ LAD claim for discrimination requires that a party file a claim within two years of the alleged misconduct. N.J.S.A. 10:5-1-49; *Montells v. Haynes*, 133 N.J. 282, 291 (1993). The general rule is that discrete acts of discrimination are not actionable if time barred, even when they are related to acts alleged in timely filed charges. *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006). The New Jersey Supreme Court, however, recognized the "continuing violation doctrine" as an equitable exception to the NJ LAD statute of limitations. *Roa v. Roa*, 200 N.J. 555, 566 (2010). A continuing violation is "a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536

U.S. 101, 122 (2002). As such, claims arising from continuing violations may not be barred by the statute of limitations. *Id.* The Court must therefore consider whether Plaintiff's retaliation claims stem from discrete acts or a continuing violation theory.

### 1. Whether Plaintiff properly states an NJ LAD claim of discrimination

Plaintiff alleges that the District transferred her (Compl. at ¶ 24), denied her promotion (*Id.* at ¶ 27), excluded her from staff meetings (*Id.* at ¶ 42), and encouraged or coerced other employees to ignore and undermine her allegations (*Id.* at ¶ 78) before terminating her employment. These are all discrete acts that occurred on specific dates and would be individually actionable unlawful employment practices. Because each discrete act starts a new statute of limitations clock, a complaint must be filed within two years of a given act in order for it to be actionable. *Morgan*, 536 U.S. at 113. The Court, however, will not permit an NJ LAD claim under a theory of discrimination where, like here, the Plaintiff fails to properly allege a specific date of their occurrence. As such, Plaintiff can only go forward under a continuing violation theory.

### 2. Whether Plaintiff properly states an NJ LAD claim of hostile work environment

The Court next considers whether Plaintiff can bring an NJ LAD claim under a continuing violation or hostile work environment theory.

Plaintiff's hostile work environment claims are based on a continuing violation that, regardless of the statute of limitations, may proceed. Again, Plaintiff alleges disparate discipline (Compl. at ¶ 21), transfers (*Id.* at ¶ 24), criticism (*Id.* at ¶ 26, 41), and an overall hostile work environment (*Id.* at ¶ 83) because of her race and in retaliation of her complaints. Because these are not discrete acts, Plaintiff is not beholden to the statute of limitations for each asserted act. Plaintiff therefore may bring her NJ LAD hostile work environment claims for acts outside the

limitations period as long as these acts were part of the same hostile work environment and at least one act occurred within the limitations period. The Court accordingly **DENIES** Defendants' motion to dismiss Plaintiff's NJ LAD claims (Count III), and Plaintiff's NJ LAD claim may proceed under a hostile work environment theory.

## IV. CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss is **GRANTED** against Defendant Eric Flecken. Relatedly, Defendants' motion to dismiss is **GRANTED** as to Count 1 against Defendant Atlantic County Special Services School District and **DENIED** as to the other counts. A corresponding Order will follow.

Dated: 3/29/2019
s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge